**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**




**CHETANAND KUMAR SEWRAZ,**

Plaintiff,

v.

Civil Action No. **3:10CV120**

**FIRST LIBERTY INSURANCE CORPORATION,**

Defendant.

## MEMORANDUM OPINION

Chetanand Kumar Sewraz ("Sewraz"), a federal prisoner proceeding *pro se* and *in forma pauperis*, brings this civil action against First Liberty Insurance Corporation ("First Liberty"). The action arises out of a burglary of Sewraz's home in Virginia and the ensuing dispute between Sewraz and First Liberty as to the pecuniary value of the loss. Sewraz asserts the following claims:

Claim 1 Breach of Contract – First Liberty breached the insurance contract when it failed to consider items belonging to Sewraz's sister and parents when adjusting his claim.

Claim 2 Fraud – First Liberty, through its agent, knowingly misrepresented material facts to Sewraz.

Claim 3 Discrimination – by the actions of its agents, First Liberty discriminated against Sewraz, a citizen of Mauritius, on the basis of alienage in violation of 42 U.S.C § 1981.

Respondent moves to dismiss on the grounds that Sewraz's breach of contract claim is time-barred and that his Claims 2 and 3 fail to state claims on which relief can be granted. Sewraz has responded. This matter is ripe for judgment.

# I. INTRODUCTION

## A. Jurisdiction and Applicable Law

This Court has subject matter jurisdiction over Claim 3, a claim of discrimination in violation of 42 U.S.C. § 1981, pursuant to 28 U.S.C. § 1331. 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). Subject matter jurisdiction over Claim 1, a state law breach of contract claim, is proper because Claim 1 meets both the diversity and amount in controversy requirements of 28 U.S.C. § 1332. 28 U.S.C. § 1332; (Compl. 9; Br. Supp. Mot. Dismiss 9.)[1] Finding that the requirements for jurisdiction are met for Claims 1 and 3, the Court exercises supplemental jurisdiction over Claim 2, a state law tort claim, because it arises out of the same "case or controversy" as Claim 3. 28 U.S.C. § 1367. "The doctrine of supplemental jurisdiction '. . . is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values.'" *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) (*quoting Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). Here, Claim 2 arises out of the same set of operative facts that give rise to Claim 3 and, thus, supplemental jurisdiction over Claim 2 is appropriate. *White v. Cnty. of Newberry, S.C.*, 985 F.2d 168, 171–72 (4th Cir. 1993); (Compl. 10, 12 (Claims 2 and 3 both reference, as their basis, the same conversation between Sewraz and an agent of First Liberty).)

Sitting in diversity, this Court applies Virginia substantive law. *Castillo v. Emergency Med. Assocs.*, 372 F.3d 643, 646 (4th Cir. 2004) (*citing Erie R.R. Co. v. Tompkins*, 304 U.S. 64,

---

[1] Because the Complaint and insurance policy are not consecutively numbered, when citing to them the Court will refer to the page numbers given those documents (Docket Nos. 1, 18-1) by the CM/ECF system.

78 (1938)). "[A] federal court sitting in Virginia and exercising diversity jurisdiction applies Virginia's choice of law rules." *Insteel Indus., Inc. v. Costanza Contracting Co.*, 276 F. Supp. 2d 479, 483 (E.D. Va. 2003). In Virginia, by statute, "[a]ll insurance contracts on or with respect to the ownership, maintenance or use of property in this Commonwealth shall be deemed to have been made in and shall be construed in accordance with the laws of this Commonwealth." Va. Code Ann. § 38.2-313 (West 2011). Thus, the Court will decide Claim 1, breach of the insurance contract for Sewraz's home in Virginia, in accordance with Virginia law.

Claim 2, a claim for common law fraud, sounds in tort. "As . . . the decisional law reflects, the settled choice of law rule for tort claims in Virginia is *lex loci delicti*—the law of the place of the wrong." *Insteel Indus., Inc.*, 276 F. Supp. 2d. at 486 (*citing Jones v. R.S. Jones & Assocs., Inc.*, 431 S.E.2d 33 (Va. 1993)). Here, the statements that are the basis for Sewraz's claim of fraud were received by him while he was an inmate at Moshannon Valley Correctional Institute in Pennsylvania. (Compl. 5–6.) Thus, Pennsylvania law applies to Claim 2. *See Insteel Indus., Inc.*, 276 F. Supp. 2d at 486–7 ("'Thus, the district court did not err in choosing, as the law governing the fraud claims, the law of the State in which each plaintiff respectively was headquartered and received defendant's [misrepresentations]'" (alteration in original) (*quoting Jordan v. Shaw Indus., Inc.*, Nos. 96-2189, *et al.*, 1997 WL 734029, at *3 (4th Cir. Nov. 26, 1997))).

**B. The Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (*citing* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356

(1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555 (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (*citing Bell Atl. Corp.*, 550 U.S. at 556). Therefore, in order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (*citing Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)).

### C. Summary of Pertinent Allegations

#### 1. The Insurance Contract

On February 22, 2006, Sewraz purchased an insurance policy (the "Policy") from First Liberty covering his home in Virginia.[2] (Mot. Dismiss Ex. 1 ("Policy"), at 2.) The Policy, issued in Sewraz's name, purports to "cover personal property owned or used by an 'insured' while it is anywhere in the world." (*Id.* at 26.) The Policy defines the term "Insured" to mean "[the policy holder] and residents of [the policy holder's] household who are: a. [the policy holder's] relatives." (*Id.* at 7.) The Policy specifically covers "direct physical loss to the [personal] property" caused by theft. (*Id.* at 12–13.) The Policy also states, in accordance with section 38.2-2105 of the Code of Virginia,[3] that "[n]o action can be brought unless . . . the action is started within two years after the date of loss." (*Id.* at 28.)

---

[2] Sewraz failed to attach a copy of the Policy to his complaint. However, First Liberty attached a copy of the Policy to their Brief in Support of Defendant's Motion to Dismiss. The Court will consider the Policy without converting the motion to dismiss to one for summary judgment because the Policy is "integral to the complaint and authentic." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (*citing Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006)). *See also Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 806–07 (E.D. Va. 2007). Given the leniency accorded *pro se* submissions, facts from some of Sewraz's subsequent submissions are included to amplify the allegations of his Complaint. *See, e.g., Erickson v. Pardus*, 551 U.S. 89, 91–92 (2007).

[3] This section reads, in pertinent part:

> [E]ach policy shall contain the following provisions, conditions, stipulations, and agreements:
>
> . . . .
>
> **Suit.** No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within two years next after inception of the loss.

Va. Code. Ann. § 38.2-2105 (West 2011).

### 2. Sewraz's Loss

Sewraz alleges that a burglary occurred at his home on or about March 15, 2006. (Compl. 2.) As of that date, Sewraz was in the custody of the United States. (*Id.*) Sewraz did not report the alleged burglary to First Liberty until January of 2007. (*Id.* at 3.) Over the next several months, Sewraz submitted information concerning the incident to First Liberty at their request. (*Id.* at 3–4.)[4]

### 3. Discrimination

On March 26, 2008, Sewraz spoke with Andrew Eaglen, the investigator assigned to his claim, by phone. (*Id.* at 4.) Eaglen told Sewraz that Sewraz's status as a non-citizen "'complicated' the matter" of his claim. (*Id.* at 5.) Sewraz informed Eaglen that Sewraz was ready and willing to litigate his claims. (*Id.*) Eaglen responded by telling Sewraz that his claim would not be denied outright on the basis of his citizenship. (*Id.*) Sewraz then expressed his concern for the amount of time that the claim was taking. (*Id.*) Eaglen told Sewraz that, because no decision had been made in his case, Sewraz could not bring a civil suit. (*Id.*) Sewraz asked Eaglen if he were certain about the time limit to which Eaglen replied that "he had been doing

[4] In his Response, Sewraz described the correspondence between himself and First Liberty. On May 1, 2007, Sewraz mailed First Liberty the completed proof of loss forms and loss information sheets. (Pl.'s Resp. Ex. 3, at 1; *see* Pl.'s Resp. Ex. 1 (letter from First Liberty requesting documents).) In that letter Sewraz also informed First Liberty that the loss information sheets contained items from four occupants of the house, to wit: Sewraz, his sister, and their parents.

On February 28, 2008, Sewraz sent a letter to Andrew Eaglen, the investigator assigned to his claim, complaining that the claim was taking too long to resolve. (Pl.'s Resp. Ex. 4, at 10.) Sewraz threatened to bring an action for, *inter alia*, breach of contract against First Liberty if he were not informed of First Liberty's intentions regarding the claim within ten days. (*Id.*) In response, Eaglen informed Sewraz that the claim "remains under investigation under a complete reservation of rights under the policy." (*Id.* at 11.) Eaglen stated that First Liberty was "presently exploring all investigative leads and [would] continue to provide updates regarding our status. I[, Eaglen,] apologize for the delay and appreciate your [Sewraz] continued patience." (*Id.*)

'this' a long time and that [Sewraz] could only bring suit after a claim is denied." (*Id.* at 6.) Eaglen further stated that under Virginia law, if the claim were denied, Sewraz would have four years after the denial to bring suit against First Liberty. (*Id.*) Sewraz asked Eaglen to put these statements in writing and Eaglen referred Sewraz to his policy. (*Id.*) Sewraz stated that he did not have a copy of the policy and was told one would be forwarded to him. (*Id.*)

**4. First Liberty's Offer**

Thereafter, Sewraz continued to comply with First Liberty's information requests. (*Id.* at 7.) Over the next several months Sewraz's attempts to communicate with First Liberty "went increasingly unanswered." (*Id.* at 8.) On February 18, 2009, Sewraz was contacted by prison officials and shown a check made out to him from First Liberty.[5] (*Id.* at 7.) "[P]rison officials informed [Sewraz] that the check would be sent back as all monies to federal inmates have to be sent to a Federal clearing center in Iowa, and not to a prison itself." (*Id.* at 8.) "Over the next

---

[5] The amount of the check was $12,834.48. (Pl.'s Resp. 1.) By way of explanation, First Liberty appended a "Personal Property Worksheet." This document stated that the full value of Sewraz's claim was $19,091.38. (*Id.* Ex. 7, at 8.) That value was adjusted downward based on several factors. (*Id.*) In his Response, Sewraz claims that he declined to endorse the check because he disagreed with the amount of the original value of the claim, pre-adjustments ($19,091.38). (*Id.* Ex. 5, at 1–2.)

Sewraz contends that, in arriving at a starting value of $19,091.38, First Liberty only considered the property belonging specifically to him rather than the total amount of lost property belonging to all residents of the house (Sewraz, his sister, and his parents). (Pl.'s Resp. 2.) Sewraz asserts that the starting value should have been approximately $78,788.00. (*Id.* at 1.) In a letter to First Liberty dated February 18, 2009, Sewraz offered to negotiate the amount of the settlement. (*Id.* Ex. 5, at 2.) "[Sewraz] repeatedly asked [First Liberty] why it did not even consider the full amount ($78,788) and how it even arrived at the figure of $19,091.38. [First Liberty] simply ignored [Sewraz]." (*Id.*)

few months, none of [Sewraz's] several inquiries were answered." (*Id.* at 7.) Sewraz filed the instant complaint on February 11, 2010.[6]

## II. ANALYSIS

### A. Breach of Contract

Sewraz makes a claim for breach of contract based on First Liberty's refusal to consider the personal property belonging to his sister and parents when calculating the full replacement value of his claim. (Compl. 9; Pl.'s Resp. 1–2.) First Liberty responds that the action is time barred due to the two-year statute of limitations stated in the Policy as required by § 38.2-2105 of the Code of Virginia. (Mot. Dismiss 10.) Sewraz seeks to avoid the statute of limitations by asserting the doctrine of equitable estoppel. (Pl.'s Resp. 5.)

#### 1. The Statute of Limitations

Section 38.2-2105 of the Code of Virginia details provisions that must be contained in all "policies for fire insurance" or "policies of fire insurance in combination with other insurance coverages." Va. Code Ann. § 38.2-2100 (West 2011) ("**Application of chapter**"); Va. Code Ann. § 38.2-2105. Sewraz's Policy covers losses due to fire as well as other types of losses and thus must comply with these provisions. *Hitt Contracting, Inc. v. Indus. Risk Insurers*, 516 S.E.2d 216, 217–18 (Va. 1999); (*see* Policy 12.) Thus, no claims on the Policy "shall be sustainable in any court of law or equity" unless brought within "two years next after inception of the loss." Va. Code Ann. § 38.2-2105; (Policy 28.)

The "inception of the loss" in this case is March 15, 2006, the date of the burglary. *See Ramsey v. Home Ins. Co.*, 125 S.E.2d 201, 202 (Va. 1962) ("As stated the fire occurred February

[6] The Court deems the Complaint filed on February 11, 2010, the date Sewraz executed his Complaint and presumably handed it to prison officials to mail to this Court. *See Houston v. Lack*, 487 U.S. 266, 276 (1988).

13, 1957, and the action was not instituted until March 20, 1958, twelve months and thirty-five days after the inception of the loss."); (Compl. 2.).[7] Thus, Sewraz had two years from the date of the burglary, or until Monday, March 17, 2008, to file an action on the policy. Sewraz filed the instant action on February 11, 2010. Because Sewraz failed to file the action within the two-year limitation period stated by law in the Policy, the action is time-barred. Sewraz, however, argues that the doctrine of equitable estoppel prevents the two-year limitation period from applying to his case. (Pl.'s Resp. 5–6.)

**2. Equitable Estoppel**

"The doctrine of equitable estoppel 'bars a statute of limitations defense by a defendant who, by his own conduct, lulls another into a false security.'" *Lamers v. Organizational Strategies, Inc.*, No. 1:08cv101 (LMB/TCB), 2008 WL 779516, at *2 (E.D. Va. Mar. 24, 2008) (*quoting Datastaff Tech. Group, Inc v. Centex Constr. Co.*, 528 F. Supp. 2d 587, 593 (E.D. Va. 2007)). To assert equitable estoppel Sewraz must allege facts that plausibly suggest: (1) First Liberty falsely represented or concealed a material fact; (2) the representation or concealment was made with knowledge of the fact; (3) Sewraz was ignorant of the truth of the matter; (4) the

---

[7] In *Ramsey*, the Supreme Court of Virginia addressed section 38.1-366 of the Code of Virginia, the predecessor to section 38.2-2105, which contained a twelve-month limitations period for bringing claims on an insurance policy. 125 S.E.2d at 201–02. In that case, the Supreme Court of Virginia stated:

> The limitation involved in the present case is not in the language of the insurance company. It is in the language of the General Assembly and expressed in words which the statute requires to be inserted in the policy, word for word, line for line, number for number. It says in plain, unambiguous words that no suit shall be sustainable unless it is commenced within twelve months next after the inception of the loss. It was enacted by the General Assembly after this court had twice said that time should be counted from the date of the fire.

*Id.* at 204.

representation was made with the intention that Sewraz should act upon it; (5) Sewraz did act upon it; and, (6) that action resulted in an injury to Sewraz. *Id.* (*quoting Boykins Narrow Fabrics Corp. v. Weldon Roofing & Sheet Metal, Inc.*, 266 S.E.2d 887, 890 (Va. 1980)). Sewraz must also show that his reliance on First Liberty's misrepresentations was reasonable. *Id.* (*citing Tuomala v. Regent Univ.*, 477 S.E.2d 501, 506 (Va. 1996)).

Sewraz asserts that First Liberty, through Eaglen, knowingly made false representations to him during the phone call of March 26, 2008 with the intention of misleading him and that he relied on these representations. (Compl. 9; Pl.'s Resp. 4.) Assuming, as we must, the truth of these assertions, Sewraz's reliance on Eaglen's statements cannot have resulted in an injury. Eaglen made the statements in a phone call on Wednesday, March 26, 2008, nine days after the two-year limitations period had run. Thus, even if Sewraz's reliance on Eaglen's statements was reasonable, Sewraz's action was foreclosed by the statute of limitations *before* Eaglen made the statements. "The doctrine of equitable estoppel has been applied only where a defendant has misled a plaintiff, causing that plaintiff to delay filing *a viable suit* until after that suit becomes barred by a statute of limitations." *Caviness v. Derand Res. Corp.*, 983 F.2d 1295, 1302 (4th Cir. 1993) (emphasis added) (*citing United States v. Fid. & Cas. Co.*, 402 F.2d 893, 897–98 (4th Cir. 1968)).

Here, had Sewraz disregarded Eaglen's statements and filed suit against First Liberty that very day, March 26, 2008, his action would still have been barred by the two-year statute of limitations enumerated in the Policy. Thus, any misrepresentation by Eaglen did not delay a viable suit because, at the time the misrepresentations were made, the statute of limitations had already run. *Id.* Because Sewraz filed his action after the two-year limitations period had run

and equitable estoppel does not apply, the action is time-barred. For the foregoing reasons, Claim 1 will be DISMISSED WITH PREJUDICE.

**B. Fraud**

Sewraz, asserting that Eaglen had a duty not to misrepresent known facts, "seeks recovery under the common law tort of Fraud." (Compl. 10.) Sewraz states that "Mr. Eaglen, agent of [First Liberty], did knowingly, willfully and maliciously misrepresent to [Sewraz] that no civil action could be brought on this claim until such claim was denied by [First Liberty]." (*Id.*) In Pennsylvania, "to establish common law fraud, a plaintiff must prove: (1) misrepresentation of a material fact; (2) scienter; (3) intention by the declarant to induce action; (4) justifiable reliance by the party defrauded upon the misrepresentation; and (5) damage to the party defrauded as a proximate result." *Colaizzi v. Beck*, 895 A.2d 36, 39 (Pa. Super. Ct. 2006) (*citing Rizzo v. Michener,* 584 A.2d 973, 980 (Pa. Super. Ct. 1990)).[8]

Here, Sewraz cannot show damage as a proximate result of Eaglen's statements due to their timing. *See supra* § II(A)(2). As discussed above, Eaglen made the statements after the statute of limitations had run and Sewraz's opportunity to file a lawsuit was lost. (Compl. 5); *see* Va. Code Ann. § 38.2-2105. Sewraz cannot, therefore, show damage because any lawsuit based on the Policy was untimely at the time the statements were made. *C.f. Cipilewski v. Szymanski*, No. 3:10-CV-2071, 2011 WL 1135163, at *5 (M.D. Pa. Mar. 25, 2011) (holding that where plaintiff was unemployed prior to alleged fraud and remained unemployed after alleged fraud plaintiff had not shown damages). Because Sewraz has not stated all of the elements of a claim

[8] Virginia law is very similar, requiring "'(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled.'" *State Farm Mut. Auto Ins. Co. v. Remley*, 618 S.E.2d 316, 321 (Va. 2005) (*quoting Prospect Dev. Co. v. Bershader*, 515 S.E.2d 291, 297 (Va. 1999)).

for common law fraud under Pennsylvania law, Claim 2 will be DISMISSED WITH PREJUDICE.

**C. Discrimination**

The United States Court of Appeals for the Fourth Circuit has held that § 1981 operates to bar private discrimination based on alienage. *Duane v. GEICO*, 37 F.3d 1036, 1044 (4th Cir. 1994). "Section 1981, in relevant part, grants all persons within the jurisdiction of the United States 'the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens.'" *Hill v. John Foster Homes, Inc.*, No. 3:10-CV-209, 2010 WL 2696655, at *3 (E.D. Va. July 7, 2010) (omissions in original) (*quoting* 42 U.S.C. § 1981(a)). Nevertheless, § 1981 reaches only purposeful discrimination. *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 374, 389 (1982).

"To succeed on a claim under . . . § 1981 . . . a plaintiff must ultimately establish both that the defendant intended to discriminate . . . and that the discrimination interfered with a contractual interest or legitimate property right." *Hill*, 2010 WL 2696655, at *3 (*citing Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 434 (4th Cir. 2006); *Mobley v. Rossell*, 297 F. Supp. 2d 835, 840 (D. Md. 2003)).

> [A] plaintiff cannot state a claim under § 1981 unless he has (or would have) rights under the existing (or proposed) contract that he wishes "to make and enforce." Section 1981 plaintiffs must identify injuries flowing from a racially motivated breach of their own contractual relationship . . . .

*Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 479–80 (2006). Plaintiffs may base a § 1981 claim on a defendant's actions that affect at least one of the contract rights listed in § 1981(b). *Spriggs v. Diamond Auto Glass*, 165 F.3d 1015, 1018 (4th Cir. 1999). The rights listed in this sub-section include "the making, performance, modification, and termination of contracts, and

the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). Proving that the underlying contract was breached is not necessary to a successful § 1981 claim. *Spriggs*, 165 F.3d at 1020. To survive a motion to dismiss for failure to state a claim, a § 1981 plaintiff need only satisfy the pleading standards set forth in Rule 8(a) of the Federal Rules of Civil Procedure. *Amos v. GEICO Corp.*, No. 06-1281 (PSJ/RLE), 2006 WL 3437608, at *4 (D. Minn. Nov. 20, 2006) (*citing Swierkiewicz v. Sorema N.A.*, 534 U.S 506, 510 (2002)).

Sewraz alleges that on March 26, 2008, Eaglen stated that "he had concerns regarding [Sewraz's] citizenship status" and "the fact that [Sewraz] was not a United States citizen and that the items stolen all belonged to non-citizens 'complicated' the matter [of his claim]." (Compl. 6.) Sewraz asserts that Eaglen then stated that Eaglen did not mean by that statement that Sewraz's claim would be denied outright on the basis of his citizenship. (*Id.* at 6.)[9] Sewraz states that "[by] the actions of [First Liberty's] agents heretofore described, it is clear that [Sewraz] was intentionally discriminated against on the basis of his alienage. Thus, on 03/26/08, [First Liberty's] agent, Mr. Eaglen, unequivocally raised only one issue preventing the successful resolution of the claim, to wit: [Sewraz's] alienage." (*Id.* at 12.) Sewraz, critically, does not

---

[9] First Liberty has pointed to two cases in support of its contention that Sewraz has failed to state a claim for discrimination under 42 U.S.C. § 1981. (Mot. Dismiss 17.) In the first, *Samuels v. Agency Ins. Co. of Md., Inc.*, the Fourth Circuit determined that the plaintiff's allegations were too conclusory and unsupported by factual allegations of discrimination. No. 99-2551, 2000 WL 627645, at *1 (4th Cir. May 16, 2000). In the second, *Barksdale v. Nationwide Mut. Ins. Co.*, the court also found that the plaintiff had failed to plead sufficient facts to support her claim of discrimination. No. 4:06CV00043, 2007 WL 200955, at *3 (W.D. Va. Jan. 23, 2007). In contrast, Sewraz has pled specific facts, in the form of statements made by Eaglen, that support his claim that First Liberty intentionally discriminated against him due to alienage. (*See* Compl. 7.) These facts are enough to support a plausible inference that First Liberty discriminated against Sewraz on the basis of his citizenship.

dispute that the phone conversation with Eaglen occurred after Monday, March 17, 2008, the date on which his right to bring claims based on the Policy expired.

In *Mitchell v. Crescent River Port Pilots Ass'n*, 265 F. App'x 363, 370–71 (5th Cir. 2008), the United States Court of Appeals for the Fifth Circuit addressed an analogous situation. The *Mitchell* plaintiff, an African-American, alleged that, by failing to consider him for a port pilot position, the defendant port pilots association discriminated against him on the basis of race in violation of §§ 1981 and 1983. *Id.* at 370. The Fifth Circuit evaluated the *Mitchell* plaintiff's claim using the framework of *McDonnell Douglass Corp. v. Green*, 411 U.S. 792 (1973). *Id.* Under *McDonnell Douglas*, a plaintiff establishes a *prima facie* case of indirect discrimination if he or she demonstrates four factors, including that he or she was eligible for the position and that he or she was rejected despite this eligibility. *Id.* (*citing McDonnell Douglas*, 411 U.S. at 802).

By state statute, an applicant to the pilot program was ineligible if he or she reached his or her fortieth birthday prior to the association voting on the question of the applicant's admission. *Id.* The *Mitchell* plaintiff admitted in his pleadings that he reached his fortieth birthday prior to the date of the alleged discrimination, the association's vote on his application. *Id.* Thus, the *Mitchell* plaintiff became ineligible for admission into the program because of his age before the association's vote. *Id.* The Fifth Circuit held that, "[b]ecause [Plaintiff] was past his fortieth birthday for all of the alleged [discriminatory] acts . . . his complaint fails to state a claim that he was the subject of discrimination based on his race because it expressly negates one of the *McDonnell Douglas* factors [i.e. eligibility for the position]." *Id.* at 370–71.

Though Sewraz has alleged direct discrimination rather than indirect discrimination, *Mitchell* is still persuasive. In his complaint, Sewraz points specifically to his phone conversation with Eaglen as the event giving rise to his claim of discrimination. (Compl. 10.)

Sewraz does not dispute, however, that this discriminatory act occurred after the date that, by operation of the statute of limitations, his right to enforcement expired. Here, as in *Mitchell*, Sewraz was ineligible to bring an action on the Policy before any discrimination interfering with his right to enforcement occurred. Thus, as in *Mitchell*, Sewraz fails to state a claim that he was the subject of discrimination based on his alienage because his complaint expressly negates one of the factors necessary to state a claim, to wit: an existing contract right at the time of discrimination. *See Mitchell*, 265 F. App'x at 370–71; *Domino's Pizza, Inc.*, 546 U.S. at 479-80 (holding that to state a § 1981 claim a plaintiff must have rights under the contract).

Sewraz fails to allege any facts that raise a reasonable inference that First Liberty interfered with his right to enforcement at any time prior to the expiration of the statute of limitations. Further, Sewraz fails to allege any contractual right other than the right of enforcement that may have been affected by First Liberty's discrimination. *Grambling Univ. Nat'l Alumni Ass'n v. Bd. of Supervisors*, 286 F. App'x 864, 870 (5th Cir. 2008) (affirming dismissal of § 1981 claim in which plaintiff failed to identify particular contractual rights that defendant prevented them from exercising); *Huang v. Culpepper*, No. DKC 10-0089, 2011 WL 310477, at *3–4 (D. Md. Jan. 28, 2011) (dismissing action where plaintiff did not identify any contractual rights that were adversely affected by defendant's misconduct and, thus, failed to state a claim under 42 U.S.C. § 1981); *Leung v. N.Y. Univ.*, No. 08-cv-5150 (GBD), 2010 WL 1372541, at *6 (S.D.N.Y Mar. 29, 2010) (dismissing § 1981 claim because "plaintiffs fail to identify any . . . contractual right which they were unable to enforce due to defendants' conduct."). Thus, Sewraz fails to state a claim under § 1981. For the foregoing reasons, Claim 3 will be DISMISSED. Nevertheless, because Sewraz ultimately may be able plead sufficient

facts to state a viable claim against First Liberty, Claim 3 will be DISMISSED WITHOUT PREJUDICE.

## III. CONCLUSION

As explained above, Defendant's motion for summary judgment (Docket No. 17) will be GRANTED. Sewraz's Claims 1 and 2 will be DISMISSED WITH PREJUDICE; Claim 3 will be DISMISSED WITHOUT PREJUDICE; and the action will be DISMISSED.

An appropriate Order will accompany this Memorandum Opinion.

/s/
James R. Spencer
United States District Judge

Date: 1-3-12
Richmond, Virginia